UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARCO BROTHERS, INC.,

    Plaintiff,

v.                                                            Case No. 08-11050
                                                              Hon. Sean F. Cox

LUCA'S CHOPHOUSE, LLC,

    Defendant.
_____

## **OPINION AND ORDER**

       This matter is before the Court on Plaintiff's Motion for preliminary injunction. Both parties have briefed the issues and an evidentiary hearing was held June 5, 2008. For the following reasons, the Court **DENIES** Plaintiff's Motion for preliminary injunction.

### I.    BACKGROUND

       This action arises out of alleged trademark infringement. Plaintiff owns and operates a restaurant in Troy, Michigan called "Larco's Italian Chophouse," and a restaurant in West Bloomfield, Michigan called "Larco's Italian Grill." Plaintiff claims it has been using the mark "Larco's" since 1952, and "Larco's Italian Chophouse" since 1995. Plaintiff submitted as exhibits registrations with the United States Patent and Trademark Office for both the name "Larco's" and the stylized mark "Larco's Italian Chophouse."

       In fall of 2007, Plaintiff claims it began receiving inquiries from customers about its location in Grand Blanc, Michigan. Plaintiff does not have a location in Grand Blanc. Plaintiff

1

was allegedly informed by a customer that a similar restaurant was operating in Grand Blanc under the name "Luca's Chophouse." Upon further investigation, Plaintiff discovered that one of the managers at Luca's Chophouse was a former employee of Plaintiff, Victor Kracaj. Kracaj was employed by Plaintiff from February 14, 2005 to July 21, 2006. Plaintiff further alleges that between June and November 2007, Kracaj came to Larco's Italian Chophouse on multiple occasions. Following one of his visits, the manager discovered a wine list was missing.

On March 11, 2008, Plaintiff filed a Complaint alleging: (1) trademark infringement pursuant to 15 U.S.C. § 1114; (2) unfair competition pursuant to 15 U.S.C. § 1125(a); (3) common law trademark infringement; (4) common law unfair competition; and (5) unjust enrichment. Plaintiff filed the instant Motion for preliminary injunction on March 14, 2008. Plaintiff seeks to enjoin Defendant from using the identical font used in Plaintiff's mark, not from using the name Luca's Chophouse.

## II. STANDARD OF REVIEW

In considering injunctive relief, the district court must take into account: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distributing Company v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). No single factor is dispositive. The court must balance the factors to determine whether they weigh in favor of an injunction. *Id*. The primary purpose of a preliminary injunction is to maintain the status quo. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

The proof required to obtain a preliminary injunction is "much more stringent than the

proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). "[P]reliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Id*. (citation omitted).

### III.   ANALYSIS

#### A.   Likelihood of Success on the Merits

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). A district court must examine and weigh eight factors to determine whether a likelihood of confusion exists:

1. strength of the senior mark;
2. relatedness of the goods or services;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. the intent of defendant in selecting the mark; and
8. likelihood of expansion of the product lines.

*Id*. "When applying these factors to a given case, a court must remember that these factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely...[e]ach case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Id*. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id*.

##### 1.   Strength of the senior mark

3

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Daddy's Junky Music*, 109 F.3d at 280. "When assessing its strength, a court will place a trademark into one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary." *Id*. The categories range in strength from lowest (generic), to highest (arbitrary). However, "assigning a category to a mark constitutes only a single step in determining the strength of the mark." *Daddy's Junky Music*, 109 F.3d at 281. "Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, that is, either inherently distinctive or descriptive with secondary meaning, and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 502 F.3d 504, 513 (6th Cir. 2007). When a mark is incontestable under 15 U.S.C. § 1065, "it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark." *Id.* at 516 (citing *Wynn Oil Company v. Am. Way Service Corporation*, 943 F.2d 595, 600 (6th Cir. 1991)).

In this case, Plaintiff's stylized mark "Larco's Italian Chophouse" is incontestable. Subject to certain exceptions, 15 U.S.C. § 1065 provides that where the use of a registered trademark in commerce has been continuous for five years from the date of registration, the mark is incontestable. Plaintiff registered the stylized mark "Larco's Italian Chophouse" on May 20, 1997. [Motion, Exhibit A]. There is no indication that the mark has not been in continuous use in commerce for five years. Thus, Plaintiff's mark is relatively strong. Defendant admits that at least with respect to the word "Larco's" Plaintiff's mark is strong. [Response, p.8]. However, Defendant argues that the mark is weak with respect to the words "Italian Chophouse."

4

Defendant's analysis is flawed. "The unit of analysis in considering the strength of the mark is the entire mark, not just a portion of the mark." *Autozone, Inc. v. Tandy Corporation*, 373 F.3d 786, 795 (6th Cir. 2004). That Plaintiff's mark contains generic words is irrelevant.

### 2. Relatedness of goods or services

If parties compete directly, confusion is likely if the marks are sufficiently similar. *Daddy's Junky Music*, 109 F.3d at 282. "[I]f the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors." *Id*. Lastly, if the goods or services are unrelated, confusion is unlikely. *Id*. "Services and goods are 'related' not because they coexist in the same broad industry, but are 'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Id*. at 282-283.

Plaintiff argues that the goods and services are identical because both parties operate restaurant and catering services. Defendant argues that although both parties operate upscale restaurants, because the cuisine is different, they are not related. Neither party addresses whether the marks are sufficiently similar.

Even assuming the goods are related, the marks are not sufficiently similar for confusion to be likely, as is addressed in the next factor.

### 3. Similarity of the marks

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music*, 109 F.3d at 283. "When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." *Id*. "[C]ourts must view marks in their entirety and

5

focus on their overall impressions, not individual features." *Id*. The relevant inquiry for similarity is whether "the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression of the other party's mark." *Wynn Oil Company v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988).

Plaintiff's mark "Larco's Italian Chophouse" is not confusingly similar to "Luca's Chophouse." While they both contain the word "chophouse," the pronunciation of the distinguishing words "Larco's" and "Luca's" are not sufficiently similar. Further, Plaintiff's mark contains the additional identifier "Italian." Marks that were more similar in content than the ones now before the Court have been found not to be confusingly similar: *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc*., 834 F.2d 568 (6th Cir. 1987)(marks "Little Caesar's" and "Pizza Caesar" found not to be similar); *Big Time Worldwide Concert & Sport Club at Town Center, LLC v. Marriott International, Inc*., 236 F.Supp.2d 791 (E.D.Mich. 2003)("Big Time Worldwide" and "Big Time Tickets," both sellers of event tickets, found not to be similar); *Luigino's Inc. v. Stouffer Corporation*, 170 F.3d 827 (8th Cir. 1999)("Lean'N Tasty" not similar to "Lean Cuisine"); and *Colony Foods, Inc. v. Sagemark, Ltd.*, 735 F.2d 1336 (Fed.Cir. 1984)("Hungry Hobo" and "Hobo Joe's" restaurants not confusingly similar).

In addition, although the font used for the words "Larco's" and "Luca's" is identical, the marks are different in overall appearance. The word "chophouse" in Defendant's mark appears inside an oval below the word "Luca's." [Motion, Exhibits D and E]. Plaintiff's mark appears with and without the word "chophouse" according to its exhibits, and the words "Italian Chophouse" are stacked under the word "Larco's" without any further adornment. The color

scheme also appears to be different. [Motion, Exhibits B and D].

### 4. Evidence of actual confusion

While evidence of actual confusion is the best evidence of a likelihood of future confusion, actual confusion is only one of several factors. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc*., 78 F.3d 1111, 1119 (6th Cir. 1996). Additionally, the confusion must be relatively pervasive, "four incidents is not a considerable quantum of evidence of actual confusion, and minimal or isolated instances of actual confusion are, obviously, less probative than a showing of substantial actual confusion." *Id.* at 1120.

In this case, the President of Larco Brothers, Inc., Mark Larco, testified that he received 8-10 phone calls from people asking for the phone number of the Larco's location in Grand Blanc. Mark Larco also testified that two customers thought the two restaurants had similar logos, but were not confused as to whether they had common ownership. Laura Janzito, the manager of Larco's, also testified. She claimed to have received one telephone call from someone asking for the phone number and location of the Larco's restaurant in Grand Blanc.

The evidence presented by Plaintiff of actual confusion is weak. The approximately 9 to 11 phone calls received by Plaintiff since Luca's Chophouse began operating in approximately July 2007 is not strong evidence of a likelihood of confusion. Moreover, the two customers Mark Larco testified he spoke to were not confused as to the ownership of Luca's Chophouse. According to Mark Larco, they merely thought the logos were similar.

### 5. Marketing channels used

This factor requires the Court to "consider the similarities or differences between the predominant customers of the parties' respective goods or services...a court must determine

whether the marketing approaches employed by each party resemble each other." *Daddy's Junky Music*, 109 F.3d at 285. The determination consists of "considerations of how and to whom the respective goods or services of the parties are sold." *Homeowners Group*, 931 F.2d at 1110. "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases." *Therma-Scan*, 295 F.3d at 636.

Defendant contends that while it uses the same forms of advertising as Plaintiff, i.e. signs, menus, internet, etc., all of its advertising is directed at Genesee County. Plaintiff does not indicate where its marketing is directed. The restaurants are in different counties and are approximately 41 miles apart according to mapquest.com. This weighs against a likelihood of confusion.[1]

### 6. Likely degree of purchaser care

"Generally, in assessing the likelihood of confusion to the public, the standard used by the court is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion." *Daddy's Junky Music*, 109 F.3d at 285.

In the context of these restaurants, the Court does not find this factor significant.

---

[1] This court is aware that the Sixth Circuit does not employ the so-called "*Dawn-Donut* rule" set forth in *Dawn Donut v. Hart's Food Stores*, 267 F.2d 358, 364 (2nd Cir. 1959); that case established a per se rule that a likelihood of confusion does not exist so long as the parties operate in separate and distinct geographical markets. Nonetheless, that fact is properly considered in the likelihood of confusion analysis under the eight factor test applied in the Sixth Circuit, as evidenced by the inclusion in the analysis of a factor devoted to whether the parties are likely to enter each other's markets.

### 7. The intent of the defendant in selecting the mark

Plaintiff relies on the fact that Luca's employs a former employee of Larco's to establish that Defendant purposefully adopted a confusingly similar mark. However, Defendant contends that it selected its mark before the employee, Victor Kracaj, was hired. Additionally, Defendant points out that Kracaj worked at two other upscale restaurants before coming to Luca's. Further, the name Luca's was chosen in honor of its owner and founder, Luca Gjonaj. There is no persuasive evidence of an intent to adopt a confusingly similar mark.

### 8. Likelihood of expansion of the product lines

Neither party alleges that it intends to open another location in the area of each other. The Court does not find this factor significant.

### 9. Balancing the Factors

Balancing the eight above factors, the Court does not find a likelihood of confusion. The two restaurants have different names and although there is an identical font used in one of the words, their overall marks are not identical. Additionally the restaurants are over 40 miles apart and serve different cuisines. This is not a circumstance that demands the extraordinary remedy of a preliminary injunction.

Thus, the Court finds Plaintiff does not have a strong likelihood of success on the merits.

### B. Irreparable Harm

"As to irreparable harm, our Circuit requires no particular finding of its likelihood to support injunctive relief in cases of this type, for irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement or unfair competition." *Lorillard Tobacco Company v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381-

382 (6th Cir. 2006)(citing *Circuit City Stores, Inc. v. CarMax, Inc*., 165 F.3d 1047, 1056 (6th Cir. 1999)).

Because the Court finds there is no likelihood of confusion, irreparable harm is not presumed. Plaintiff alleges that it has been harmed and is likely to continue to be harmed if Defendant is allowed to use its stylized mark. Plaintiff claims its reputation is at stake. Plaintiff relies on the aforementioned evidence of actual confusion. However, the actual confusion attested to by Plaintiff is not pervasive, and there is no indication that the customers calling for the number of the Grand Blanc location would even patronize Plaintiff's Troy restaurant. The Court finds Plaintiff has not established it will suffer irreparable harm if the injunction does not issue.

Defendant argues it will suffer harm if the injunction issues because it would be forced to change all of its menus, signs, advertising, etc. However, Defendant does not submit any estimate or evidence of what these changes would cost.

The Court finds this factor does not weigh in either parties' favor.

### C. Substantial Harm to Others

Neither party establishes that there is a risk of substantial harm to others. This factor is insignificant.

### D. Public Interest

Neither party establishes a public interest in the issuance, or not, of an injunction. This factor is insignificant.

### IV. CONCLUSION

For the foregoing reasons, this Court **DENIES** Plaintiff's Motion for a preliminary

injunction.

       **IT IS SO ORDERED.**

                                       **S/Sean F. Cox**
                                       **Sean F. Cox**
                                       **United States District Judge**

**Dated: June 11, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on June 11, 2008, by electronic and/or ordinary mail.**

                                       **S/Jennifer Hernandez**
                                       **Case Manager**